**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

```
------------------------------------------------------------------ x
In re:                                          :    Chapter 11
                                                :
ATLANTIS PLASTICS, INC.,                        :    Case No. 08-75473
ATLANTIS PLASTIC FILMS, INC.,                   :
ATLANTIS FILMS, INC.,                           :    (Jointly Administered)
ATLANTIS MOLDED PLASTICS, INC.,                 :
ATLANTIS PLASTICS INJECTION MOLDING, INC.,      :    Judge Paul Bonapfel
EXTRUSION MASTERS, INC.,                        :
LINEAR FILMS, INC.,                             :
PIERCE PLASTICS, INC., and                      :
RIGAL PLASTICS, INC.,                           :
                                Debtors.        :
                                                :
------------------------------------------------------------------ x
```

**DEBTORS' MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 60 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE
9024 TO AMEND INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN
POST-PETITION SECURED FINANCING, ET AL., OF AUGUST 19, 2008,
TO ATTACH THE INITIAL APPROVED BUDGET AS EXHIBIT "A"**

Atlantis Plastics, Inc., *et al.*, the debtors and debtors in possession in the above-caption chapter 11 cases (collectively, the "**Debtors**" or the "**Company**"), hereby move the Court (the "**Motion**"), pursuant to Federal Rule of Civil Procedure 60(a) made applicable by Federal Rule of Bankruptcy Procedure 9024, for entry of an amended order ("**Amended Interim Order**") amending the Interim Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing, *et al.*, of August 19, 2008 (Docket Number 81), ("**Subsequent Interim Order**"), for the purpose of attaching the Initial Approved Budget as Exhibit "A" and respectfully represent as follows:

## Background

1.      On August 11, 2008, the Court held a hearing on Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing the Debtors' Limited Use of Cash Collateral Pursuant to 11 U.S.C. § 363, (III) Granting Adequate Protection to Prepetition Secured Lenders Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, and (IV) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001 (the "**Motion**").

2.      On August 12, 2008, the Court entered an order approving the Motion on an interim basis (the "**Original Interim Order**") and scheduled a subsequent interim hearing for August 18, 2008 (the "**Subsequent Interim Hearing**").

3.      On August 19, 2008, the Court entered the Subsequent Interim Order as Document Number 81 on the jointly-administered docket for these bankruptcy cases (the "**Docket**").

4.      Due to a clerical mistake, the Subsequent Interim Order was entered without the Initial Approved Budget (as defined in the Subsequent Interim Order) attached as Exhibit "A".

## Relief Requested

5.      By this Motion, the Debtors seek entry of an Amended Interim Order that includes the Initial Approved Budget in the form attached hereto as Exhibit "A."

6.      Federal Rule of Civil Procedure 60(a), as made applicable by Federal Rule of Bankruptcy Procedure 9024 provides as follows in relevant part:

> **(a) Clerical Mistakes.**  Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the Court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders….

7.      The inadvertent failure to attach the Initial Approved Budget was a clerical error, and the Debtors believe granting the requested relief requested herein is appropriate under Federal Rule of Civil Procedure 60(a).

## **<u>Notice</u>**

8.      The Debtors propose to serve notice of the filing of this Motion via facsimile, e-mail, and/or overnight mail to: (i) the Office of the United States Trustee for the Northern District of Georgia; (ii) counsel for the Official Committee of Unsecured Creditors; (iii) the agent and attorneys for the Senior Secured Lenders; (iv) the agent and attorneys for the Junior Secured Lenders; (v) the Development Authority of Cartersville, Georgia; (vi) the City of Mankato, Minnesota; and (vii) GE Capital Public Finance.  In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein by entering the Amended Interim Order and granting the Debtors such other and further relief as the Court deems just and proper.

Dated:  August 20, 2008
Atlanta, Georgia

Respectfully submitted,

GREENBERG TRAURIG, LLP


By:  ___/s/ David B. Kurzweil___
David B. Kurzweil (Ga. Bar No. 430492)
John J. Dyer (Ga. Bar No. 236844)
3290 Northside Parkway, Suite 400
Atlanta, Georgia 30327
Telephone: (678) 553-2100
Fax: (678) 553-2212
Email: kurzweild@gtlaw.com
Email: dyerj@gtlaw.com

Proposed attorneys for Debtors
and Debtors-in-Possession

**Exhibit "A"**

**Amended Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

------------------------------------------------------------------ x

In re:                                                 :   Chapter 11
                                                       :
ATLANTIS PLASTICS, INC.,                               :   Case No. 08-75473
ATLANTIS PLASTIC FILMS, INC.,                          :
ATLANTIS FILMS, INC.,                                  :   (Jointly Administered)
ATLANTIS MOLDED PLASTICS, INC.,                        :
ATLANTIS PLASTICS INJECTION MOLDING, INC., :   Judge Paul Bonapfel
EXTRUSION MASTERS, INC.,                               :
LINEAR FILMS, INC.,                                    :
PIERCE PLASTICS, INC., and                             :
RIGAL PLASTICS, INC.,                                  :
                                        Debtors.        :
                                                       :
------------------------------------------------------------------ x

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO**
**OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO**
**11 U.S.C. § 364, (II) AUTHORIZING THE DEBTORS' LIMITED USE OF**
**CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING**
**ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS**
**PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364, AND (IV) SCHEDULING**
**FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

        Upon the motion of the debtors and debtors-in-possession (collectively, the

"**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), dated August 10,

2008 (the "**Motion**"), (a) seeking the entry of this interim order (this "**Order**") and a final order (the "**Final Order**"): (i) authorizing Atlantis Plastic Films, Inc. ("**Atlantis Plastic Films**" or "**Borrower Representative**"), Atlantis Molded Plastics, Inc. ("**Atlantis Molded Plastics**"), Atlantis Films, Inc. ("**Atlantis Films**"), Rigal Plastics, Inc. ("**Rigal Plastics**"), Atlantis Plastics Injection Molding, Inc. ("**Injection Molding**"), Pierce Plastics, Inc. ("**Pierce Plastics**"), and Extrusion Masters, Inc. ("**Extrusion Masters**" and together with Atlantis Plastic Films, Atlantis Molded Plastics, Atlantis Films, Rigal Plastics, Injection Molding and Pierce Plastics, in such capacity as postpetition borrowers, collectively, the "**Borrowers**" and individually, a "**Borrower**") to obtain senior secured post-petition financing in an aggregate principal amount not to exceed $26,500,000 (the "**Postpetition Facility**"), pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and authorizing each of the other Debtors (collectively, the "**Guarantors**") to unconditionally guaranty each Borrower's obligations under the Postpetition Facility, from GE Business Financial Services Inc. (formerly known as Merrill Lynch Business Financial Services Inc.) (in its individual capacity, "**GE Business**"), as administrative agent and collateral agent (in such capacity, the "**Postpetition Agent**") for itself and a syndicate of financial institutions (collectively with GE Business, the "**Postpetition Lenders**"), pursuant to the terms of this Order and that certain Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement, dated as of August 11, 2008, by and among each Borrower, the Guarantors, the Postpetition Agent, and the Postpetition Lenders, in substantially the form attached to the Motion as Exhibit A (as the same may be amended, restated, supplemented or otherwise modified from time to time, the "**Postpetition Credit Agreement**");[1] (ii) authorizing the Debtors to execute, deliver and enter into the Postpetition Credit Agreement and other Postpetition Loan Documents (as defined in paragraph 2 below) and to perform such other and further acts as may be required in connection with the Postpetition

---

[1]    Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Postpetition Credit Agreement.

Loan Documents; (iii) granting security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the Postpetition Agent, for the benefit of itself and the Postpetition Lenders, to secure all obligations of the Debtors under and with respect to the Postpetition Facility; (iv) authorizing the Debtors' limited use of Cash Collateral (as defined in paragraph E below), solely on the terms and conditions set forth in this Order and in the Postpetition Loan Documents; (e) granting adequate protection to the Prepetition Secured Lenders (as defined in paragraph D.7 below), whose liens and security interests are being primed by the Postpetition Facility, as more fully set forth in this Order; and (v) modifying the automatic stay imposed under section 362 of the Bankruptcy Code; (b) requesting, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the applicable Local Bankruptcy Rules of this Court, that an emergency interim hearing (the "**Initial Interim Hearing**") on the Motion be held before this Court to consider entry of this Order, which authorizes the Debtors to borrow under the Postpetition Loan Documents, on an interim basis, up to an aggregate principal amount not to exceed $24,000,000; and (c) requesting, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Bankruptcy Rules of this Court, that this Court (i) schedule a final hearing (the "**Final Hearing**") on the Motion as set forth in paragraph 35 below to consider entry of the Final Order authorizing the balance of the borrowings and letter of credit issuances under the Postpetition Loan Documents on a final basis, and (ii) approve notice procedures with respect thereto; and the Initial Interim Hearing having been held before this Court on August 11, 2008; and this Court having entered an order approving the Motion on an interim basis (the "**Original Interim Order**") but scheduling a subsequent interim hearing (the "**Subsequent Interim Hearing**", and together with the Initial Interim Hearing, the "**Interim Hearing**") with respect to the relief described in paragraph 4(c) (Repayment of Special Accommodation Loan) and paragraph 13 (Carve-Out) (together, the

"**Specified Paragraphs**") of the Original Interim Order; and such Subsequent Interim Hearing having been held before this Court on August 18, 2008; and this Court having considered the Motion and all pleadings related thereto, including the record made by the Debtors at the Interim Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

### THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]

      A.   <u>Commencement of Cases</u>.  On August 10, 2008 (the "**Petition Date**"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no creditors' committee (the "**Creditors' Committee**") has yet been appointed in the Chapter 11 Cases.

      B.   <u>Jurisdiction; Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure.  Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.   <u>Adequate Notice</u>.  On August 11, 2008, the Debtors filed the Motion with this Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Bankruptcy Rules of this Court, the Debtors have provided notice of the Motion and the Initial Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated: (i) the Office of the United States Trustee for this District (the "**U.S. Trustee**"); (ii) the Debtors' forty (40) largest unsecured creditors on a

---

2  Pursuant to Bankruptcy Rule 7052, any findings of fact contained herein that may be construed as matters of law shall be treated as conclusions of law as if set forth below, and vice versa.

consolidated basis; (iii) counsel to the Postpetition Agent; (iv) counsel to the Prepetition Senior Agent (as defined in paragraph D.1 below); (v) counsel to the Prepetition Junior Agent (as defined in paragraph D.7 below); (vi) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (vii) all financial institutions at which the Debtors maintain deposit accounts; (viii) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; (ix) the local office for the Internal Revenue Service and (ix) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof (collectively, the "**Notice Parties**").  The Debtors have provided notice of the Subsequent Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the Notice Parties on or about August 13, 2008.  Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and no further notice relating to this proceeding is necessary or required.

    D.  Prepetition Loan Documents, Liens and Claims.

    (a)  Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 30 of this Order, the Debtors admit, stipulate and agree that, on and as of the Petition Date, the Debtors were indebted and bound as described below:

    **Prepetition Senior Agent and Prepetition Senior Lenders**

    1.  Pursuant to that certain Credit Agreement, dated as of March 22, 2005 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Senior Credit Agreement**"), among each Borrower, each of the other Debtors as guarantors, GE Business Financial Services Inc. (formerly known as Merrill Lynch Business Financial Services Inc.), as administrative agent and collateral agent for itself and the Prepetition Senior Lenders (as defined below) (in such capacity, the "**Prepetition Senior Agent**"), and the other lenders party thereto (collectively, the "**Prepetition Senior Lenders**"), the Prepetition Senior Agent and Prepetition Senior Lenders agreed to extend loans to, and issue letters of credit for, the Borrowers.  The Prepetition Senior Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, are collectively referred to herein as the "**Prepetition**

**Senior Loan Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time).

2.     All obligations of the Debtors arising under the Prepetition Senior Credit Agreement (including, without limitation, the "Obligations" as defined therein) or any other Prepetition Senior Loan Document shall collectively be referred to herein as the "**Prepetition Senior Obligations**."

3.     Pursuant to the Collateral Documents (as defined in the Prepetition Senior Credit Agreement) (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Senior Collateral Documents**"), by and between each of the Debtors and the Prepetition Senior Agent, each Debtor granted to the Prepetition Senior Agent, for the benefit of itself and the Prepetition Senior Lenders, to secure the Prepetition Senior Obligations, a first priority security interest in and continuing lien (the "**Prepetition Senior Liens**") on substantially all of such Debtor's assets and property, and all proceeds, products, accessions, rents and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.  All collateral granted or pledged by the Debtors pursuant to any Prepetition Senior Collateral Document or any other Prepetition Senior Loan Document, including, without limitation, the "Collateral" as defined in the Prepetition Senior Credit Agreement, and all pre-petition and post-petition proceeds thereof shall collectively be referred to herein as the "**Prepetition Senior Collateral**".

4.     (i) All Prepetition Senior Loan Documents executed and delivered by the Debtors to the Prepetition Senior Agent or any Prepetition Senior Lender are valid and enforceable by the Prepetition Senior Agent and the Prepetition Senior Lenders against each of the Debtors; (ii) the Prepetition Senior Liens constitute valid, binding, enforceable and perfected first priority liens and security interests in and on the Prepetition Senior Collateral, subject only to the Prior Liens (as defined below in this paragraph) and are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Postpetition Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order); (iii) the Prepetition Senior Obligations constitute legal, valid and binding obligations of each of the Debtors, (iv) no offsets, defenses or counterclaims to the Prepetition Senior Obligations exist, (v) no portion of the Prepetition Senior Obligations, or any amounts previously paid to Prepetition Senior Agent or any Prepetition Senior Lender on account of or with respect the Prepetition Senior Obligations, are subject to avoidance, reduction, disgorgement, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (vi) each of the Guaranties (as defined in the Prepetition Senior Credit Agreement) continues in full force and effect notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the Postpetition Agent or Postpetition Lenders to the Debtors pursuant to the terms of this Order or Postpetition Loan Documents.

5.     The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Senior Agent or any Prepetition Senior Lender with respect to the Prepetition Senior Credit Agreement or any other Prepetition Senior Loan Documents, whether arising at law or at equity, including, without

limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

6.    As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Senior Agent and Prepetition Senior Lenders pursuant to the Prepetition Senior Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $153,100,000 in respect of loans made and letters of credit issued by the Prepetition Senior Agent and Prepetition Senior Lenders (including, without limitation, the Special Accommodation Loans (as defined in the Prepetition Senior Credit Agreement) in the aggregate principal amount of not less than $12,000,000), plus all accrued or, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Senior Loan Documents) now or hereafter due under the Prepetition Senior Credit Agreement and the other Prepetition Senior Loan Documents.

## **Prepetition Junior Agent and Prepetition Junior Lenders**

7.    Pursuant to that certain Second Lien Credit Agreement, dated as of March 22, 2005 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Junior Credit Agreement**"), among each Borrower, each of the other Debtors as guarantors, and The Bank of New York, as administrative agent and collateral agent for itself and the Prepetition Junior Lenders (as defined below) (in such capacity, the "**Prepetition Junior Agent**" and, together with the Prepetition Senior Agent, the "**Prepetition Agents**"), and the other lenders party thereto (collectively, the "**Prepetition Junior Lenders**" and, together with the Prepetition Senior Lenders, the "**Prepetition Secured Lenders**"), the Prepetition Junior Lenders agreed to extend term loans to the Debtors in an aggregate principal amount of $75,000,000.  The Prepetition Junior Credit Agreement, along with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, are collectively referred to herein as the "**Prepetition Junior Loan Documents**" (as the same may be amended, restated, supplemented or otherwise modified from time to time).

8.    All obligations of the Debtors arising under the Prepetition Junior Credit Agreement (including, without limitation, the "Obligations" as defined therein) or any other Prepetition Junior Loan Document shall collectively be referred to herein as the "**Prepetition Junior Obligations**."

9.    Pursuant to the Collateral Documents (as defined in the Prepetition Junior Credit Agreement) (as such documents are amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Junior Collateral Documents**"), by and between each of the Debtors and the Prepetition Junior Agent, each Debtor granted to the Prepetition Junior Agent, for the benefit of itself and the Prepetition Junior Lenders, to secure the Prepetition Junior Obligations, a second priority security interest in and continuing lien (the "**Prepetition Junior Liens**") in the Prepetition Senior Collateral.

10.    (i) All Prepetition Junior Loan Documents executed and delivered by the Debtors to the Prepetition Junior Agent are valid and enforceable by the Prepetition Junior Agent and the Prepetition Junior Lenders against each of the Debtors; (ii) the Prepetition Junior Liens constitute valid, binding, enforceable and perfected second priority liens and security interests in and on the Prepetition Senior Collateral, subject only to the Prior Liens (as defined below in this paragraph) and the Prepetition Senior Liens to the extent provided in the Prepetition Intercreditor Agreement (as defined in paragraph K below) and are not subject to avoidance, reduction, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the Postpetition Liens and the Carve-Out (each term as hereinafter defined) in accordance with the provisions of this Order; (iii) the Prepetition Junior Obligations constitute legal, valid and binding obligations of each of the Debtors, (iv) no offsets, defenses or counterclaims to the Prepetition Junior Obligations exist, (v) subject to the terms of the Prepetition Intercreditor Agreement, no portion of the Prepetition Junior Obligations, or any amounts previously paid to Prepetition Junior Agent or any Prepetition Junior Lender on account of or with respect the Prepetition Junior Obligations, are subject to avoidance, reduction, disgorgement, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (vi) each of the Guaranties (as defined in the Prepetition Junior Credit Agreement) continues in full force and effect notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the Postpetition Agent or Postpetition Lenders to the Debtors pursuant to the terms of this Order or Postpetition Loan Documents.

11.    The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Junior Agent or any Prepetition Junior Lender with respect to the Prepetition Junior Credit Agreement or any other Prepetition Junior Loan Documents, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other debtor claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

12.    As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Junior Agent and Prepetition Junior Lenders pursuant to the Prepetition Junior Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $75,000,000 in respect of loans made by the Prepetition Junior Agent and Prepetition Junior Lenders, plus all accrued or, subject to section 506(b) of the Bankruptcy Code, hereafter accruing and unpaid interest thereon and any additional fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Junior Loan Documents) now or hereafter due under the Prepetition Junior Credit Agreement and the other Prepetition Junior Loan Documents.

(b)    The Debtors irrevocably waive any right to challenge or contest the

Prepetition Senior Liens and Prepetition Junior Liens and the validity of the Prepetition Senior

Obligations and Prepetition Junior Obligations; provided that, subject to paragraph 29 of this

Order and the time limitations specified in paragraph 30 of this Order, none of the foregoing

acknowledgments or agreements by the Debtors contained in this <u>paragraph D</u> shall be binding on any other party and shall not affect the rights of any committee, Person or entity (other than the Debtors) with respect to their rights to assert, pursue or otherwise allege any of the claims and actions described in <u>paragraph 30</u> of this Order.  Notwithstanding anything in this Order to the contrary, the Debtors and all other parties in interest reserve all of their respective rights (x) as to the value of the Prepetition Senior Collateral and may at any time during the Chapter 11 Cases seek and obtain a determination of this Court under section 506(a) of the Bankruptcy Code that all or any portion of the Prepetition Senior Obligations and/or Prepetition Junior Obligations constitute unsecured deficiency claims and (y) regarding the amount, if any, of the Adequate Protection Senior Obligations (as defined below) and Adequate Protection Junior Obligations (as defined below).

(c)    As used herein, the term "**<u>Prior Liens</u>**" means only valid, enforceable, and non-avoidable liens and security interests in the Prepetition Senior Collateral that were perfected prior to the Petition Date (or perfected on or after the Petition Date to the extent permitted by Section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Prepetition Senior Liens under applicable law and after giving effect to any subordination or inter-creditor agreements.  For the avoidance of doubt, the Prior Liens shall not include, or be deemed to include, any or all of the Prepetition Senior Liens, Adequate Protection Senior Liens (as defined in <u>paragraph 17(a)</u> below), Prepetition Junior Liens and/or Adequate Protection Junior Liens (as defined in <u>paragraph 18(a)</u> below), all of which liens are being primed by the Postpetition Liens as set forth herein.

E.    <u>Cash Collateral</u>.  For purposes of this Order, the term "**<u>Cash Collateral</u>**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code and shall include and consist of, without limitation, all of the respective cash proceeds of the Postpetition Collateral (as defined below in <u>paragraph 9</u> of this Order) and Prepetition Senior

Collateral in which any of the Prepetition Agents or Prepetition Secured Lenders has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Order, any other order of this Court, applicable law or otherwise.

F.   Exigent Circumstances.  The Debtors have an immediate and critical need to obtain post-petition financing under the Postpetition Facility and to use Cash Collateral in order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, and satisfy other working capital and operational needs and repay the Special Accommodation Loans in full.  The Debtors' access to sufficient working capital and liquidity through the incurrence of post-petition financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates.  Consequently, without access to the Postpetition Facility and the use of Cash Collateral, to the extent authorized pursuant to this Order, the Debtors and their estates would suffer immediate and irreparable harm.

G.   No Alternative Sources of Funding.  The use of Cash Collateral alone would be insufficient to meet the Debtors' post-petition liquidity needs.  Given the Debtors' current financial condition and capital structure, the Debtors have attempted but are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code, from sources other than the Postpetition Agent and the Postpetition Lenders on terms more favorable than the terms of the Postpetition Facility.  The only source of secured credit available to the Debtors, other than the use of Cash Collateral, is the Postpetition Facility.  The Debtors require

both additional financing under the Postpetition Facility and the use of Cash Collateral under the terms of this Order in order to satisfy their post-petition liquidity needs.  After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the Postpetition Agent and the Postpetition Lenders pursuant to the terms of this Order and the Postpetition Loan Documents represents the best financing presently available to the Debtors.

H.    Willingness of Postpetition Lenders.    The Postpetition Agent and the Postpetition Lenders have indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Order and in the Postpetition Loan Documents.

I.    Limited Consent.    The consent of the Prepetition Senior Agent and the Prepetition Senior Lenders to the priming of their liens by the Postpetition Liens is limited to the Postpetition Facility presently before this Court, with GE Business as Postpetition Agent and a subset of the Prepetition Senior Lenders as Postpetition Lenders, and shall not, and shall not be deemed to, extend to any other post-petition financing or to any modified version of this Postpetition Facility with any party other than GE Business as Postpetition Agent.  Furthermore, the consent of the Prepetition Senior Agent and the Prepetition Senior Lenders to the Debtors' use of Cash Collateral and the priming of their liens by the Postpetition Liens as provided in this Order does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Senior Agent and the Prepetition Senior Lenders that their interests in the Prepetition Senior Collateral are adequately protected pursuant to this Order or otherwise.  Nothing in this Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Senior Agent or any Prepetition Senior Lender are or will be adequately protected with respect to any non-consensual use of Cash Collateral or non-consensual priming of the Prepetition Senior Liens.

J.      Section 364(d) Finding.  The security interests and liens granted pursuant to this Order to the Postpetition Agent, for the benefit of itself and the Postpetition Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in any property of the Debtors' estates, and/or (ii) the holders of such security interests and liens have consented (or are deemed to have consented) to the security interests and priming liens granted pursuant to this Order to the Postpetition Agent for the benefit of itself and the Postpetition Lenders.

K.      Prepetition Intercreditor Agreement.  Pursuant and subject to Section 7.2 of that certain Intercreditor Agreement, dated as of March 22, 2005 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Intercreditor Agreement**"), by and between the Debtors, the Prepetition Senior Agent, on behalf of itself and the Prepetition Senior Lenders, and the Prepetition Junior Agent, on behalf of itself and the Prepetition Junior Lenders, the Prepetition Junior Agent has agreed: (i) to subordinate its liens in the Prepetition Senior Collateral to the Postpetition Liens and the Adequate Protection Senior Liens, and (ii) that it will not request adequate protection or any other relief in connection with the Debtors' entry into the Postpetition Facility or their use of Cash Collateral, except as expressly agreed to by the Prepetition Senior Agent or to the extent permitted under Section 7.2 of the Prepetition Intercreditor Agreement.

L.      Good Cause Shown.  Good cause has been shown for immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and such relief is in the best interest of the Debtors, their estates and creditors.  In particular, the authorizations granted herein for the Debtors to execute the Postpetition Loan Documents, to use the Cash Collateral, and to obtain interim financing, including on a priming lien basis, are necessary to avoid immediate and irreparable harm to the Debtors and their estates, are fair and reasonable, reflect the Debtors'

exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

M.   <u>Section 364(e); Good Faith</u>.  The Postpetition Facility, Postpetition Loan Documents, use of Cash Collateral and provision of adequate protection contained herein have been negotiated in good faith and at arm's-length among the Debtors, the Prepetition Senior Agent and Postpetition Agent.   Accordingly, any credit extended and loans made to, Cash Collateral used by, and adequate protection provided by the Debtors pursuant to this Order shall be, and hereby are, deemed to have been extended, issued, made, used or provided, as the case may be, in "good faith" as required by, and within the meaning of, section 364(e) of the Bankruptcy Code.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.   <u>Motion Granted</u>.  The Motion is approved on an interim basis on the terms and conditions set forth in this Order.  This Order shall become effective immediately upon its entry.  To the extent any provisions in this Order conflict with any provisions of the Postpetition Loan Documents, the provisions of this Order shall control and govern to the extent of such conflict.  All objections to the entry of this Order have been withdrawn or overruled.  This Order amends, restates and supersedes in full the Original Interim Order and all actions taken in connection with or in reliance on the Original Interim Order are hereby reaffirmed in full as if taken in connection with or in reliance on this Order.

2.   <u>Postpetition Loan Documents</u>.   The terms and conditions of the Postpetition Credit Agreement are hereby approved.  The Debtors are hereby authorized to enter into and deliver the Postpetition Credit Agreement and such additional documents, instruments, notes and agreements as may be reasonably required by the Postpetition Agent to implement the

terms or effectuate the purposes of this Order (as such additional documents, instruments, notes and agreements may be amended, restated, supplemented or otherwise modified from time to time, together with the Postpetition Credit Agreement, the "**Postpetition Loan Documents**"). Each Borrower is hereby authorized to borrow money and obtain letters of credit under the Postpetition Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings and each Borrower's obligations with respect to such letters of credit, in accordance with the terms of this Order and the Postpetition Loan Documents. Upon execution and delivery thereof by any Borrower or any other applicable Debtor, the Postpetition Loan Documents shall be incorporated by reference as part of this Order and shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto (and its respective estate, successor and assigns) in accordance with the terms thereof. The Postpetition Agent may from time to time impose reserves against Borrowing Availability as Postpetition Agent deems necessary or appropriate in accordance with the Postpetition Credit Agreement (or, if not specified therein, in the reasonable credit judgment of the Postpetition Agent), including, without limitation, a reserve for the Carve-Out (as defined in paragraph 13 below).

3.    Amendments.  The Debtors are hereby authorized, without further notice, motion or application to, order of, or hearing before, this Court, to enter into agreements with the Postpetition Agent providing for any non-material modifications to the Approved Budget or the Postpetition Credit Agreement, or of any other modifications to the Postpetition Credit Agreement necessary to conform the Postpetition Credit Agreement to this Order; provided, however, that notice of any material modification or amendment to the Approved Budget or the Postpetition Credit Agreement shall be provided to counsel to the Creditors' Committee (and any subsequent trustee of the Debtors' estates) and counsel to the U.S. Trustee, each of whom shall have three (3) days from the date of such notice within which to object in writing to such modification or amendment.  If the Creditors' Committee (or any subsequent trustee of the Debtors' estates) or the U.S. Trustee timely objects to any material modification or amendment

ATL 16,914,319v1

to the Approved Budget or the Postpetition Credit Agreement, then such modification or amendment shall only be permitted pursuant to an order of this Court.

    4.    <u>Permitted Use</u>.

    a.    <u>Generally</u>. Notwithstanding anything in this Order to the contrary, the Debtors may use the Cash Collateral and proceeds of the Postpetition Facility, obtain and maintain Letters of Credit and incur Postpetition Obligations solely in accordance with and pursuant to the financial covenants, availability formulae, and other terms and conditions set forth in the Postpetition Loan Documents and this Order, including, without limitation, pursuant to the Approved Budget (as defined in <u>paragraph 8</u> below), but, except as provided in <u>paragraph 4(d)</u> below, in all events only until the occurrence of the Commitment Termination Date (as defined in the Postpetition Credit Agreement). Notwithstanding the foregoing, but subject to the Maximum Amount (as defined in <u>paragraph 7</u> below), if the Postpetition Agent or the Postpetition Lenders in their respective sole discretion advance funds or provide other extensions of credit to the Debtors in excess of any financial covenants, availability formulae, or other terms and conditions (or any other limitations in the Postpetition Loan Documents, including, without limitation, the Approved Budget), such advances (and any other indebtedness in excess of such amount) shall constitute Postpetition Obligations entitled to the rights, priorities, benefits and protections of the Postpetition Loan Documents and this Order.

    b.    <u>No Duty to Monitor Compliance</u>. The Postpetition Agent, the Prepetition Agents, the Postpetition Lenders and the Prepetition Secured Lenders may assume the Debtors will comply with this Order, the Approved Budget and the Postpetition Loan Documents and shall not (i) have any obligation with respect to the Debtors' use of Cash Collateral or the use of proceeds of the Postpetition Facility; (ii) be obligated to ensure or monitor the Debtors' compliance with any financial covenants, formulae, or other terms and conditions of any Postpetition Loan Document or (iii) be obligated to pay (directly or indirectly

from the Prepetition Senior Collateral or Postpetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Postpetition Loan Documents.

c.   <u>Repayment of Special Accommodation Loans</u>.  The Debtors shall promptly repay the Special Accommodation Loans in full in cash in accordance with the terms and conditions of the Prepetition Senior Loan Documents.  The payment by the Debtors of such amounts shall not alter or limit any rights and remedies of the Creditors' Committee (or any subsequent trustee of the Debtors' estates) arising under <u>paragraph 30</u> of this Order.

d.   <u>Management Incentive and Severance Plans</u>.  On the Petition Date, the Debtors filed that certain Motion for Order Authorizing Debtors to Implement the Management Severance and Incentive Program (the "**Employee Programs Motion**") pursuant to which the Debtors seek, among other things, this Court's authorization to implement the Management Program (as defined therein) attached as Exhibit A thereto.   In connection therewith, the Debtors shall comply with the following covenants:

(1)   Subject to entry by this Court of an order approving the Employee Programs Motion and the Management Program described therein (the "**Employee Programs Order**"), the Debtors shall be authorized to obtain Loans under the Postpetition Facility in an amount equal to the maximum permitted payments described on Schedule 1 to the Management Program (which amount shall not exceed $658,032 in the aggregate, the "**Maximum Permitted Amount**");

(2)   The Debtors shall deposit such amount into a separate bank account at a financial institution reasonably acceptable to the Postpetition Agent (the "**Employee Programs Account**") and shall provide notice thereof to the United States Trustee and counsel for the Creditors' Committee (and any subsequent trustee of the Debtors' estates);

(3)   The Employee Programs Account shall, at all times, only contain funds in an amount equal to the then unused portion of the Maximum Permitted Amount and the Debtors shall not deposit any other funds or property into such account or otherwise commingle funds in the Employee Programs Account; and

(4)   The funds held in the Employee Programs Account shall only be used by the Debtors to make payments permitted under the Employee Programs Order, as and when such payments are earned and properly due and

payable under the Management Program (such payments, the "**Permitted Payments**").

For the avoidance of doubt, the Employee Programs Account, and funds contained therein, shall constitute Postpetition Collateral (as defined below) for all purposes of this Order and shall be subject to the Postpetition Liens, Adequate Protection Senior Liens and Adequate Protection Junior Liens (each as defined below).  The Debtors (i) are authorized to fund the Employee Programs Account and make the Permitted Payments notwithstanding the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement or the Commitment Termination Date and (ii) shall promptly return to the Postpetition Agent any excess funds contained in the Employee Programs Account upon payment of all Permitted Payments, with such funds being treated in accordance with the provisions of this Order.

5.      Postpetition Obligations.   For purposes of this Order, the term "**Postpetition Obligations**" shall mean all amounts owing under the Postpetition Credit Agreement and other Postpetition Loan Documents (including, without limitation, all "Obligations" as defined in the Postpetition Credit Agreement) and shall include the principal of, interest on, fees, costs, expenses and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees, costs and expenses that are chargeable or reimbursable under the Postpetition Loan Documents), and any obligations in respect of letters of credit or indemnity claims, in each case whether contingent or otherwise.

6.      Interest, Fees, Costs and Expenses.   The Postpetition Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Order and the Postpetition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.  The Debtors shall pay on demand all fees, costs, expenses and other charges payable under the terms

of the Postpetition Loan Documents, including, without limitation, all of the fees specified in the GE BFS Fee Letter (as defined in the Postpetition Credit Agreement) and those fees, costs and expenses described in section 11.3 (Fees and Expenses) and section 1.13 (Indemnity) of the Postpetition Credit Agreement, in each case whether or not the Postpetition Credit Agreement and transactions contemplated therein are consummated. None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, that the Postpetition Agent shall submit copies of its professional fee invoices to the Debtors, the U.S. Trustee and counsel for the Creditors' Committee (and any subsequent trustee of the Debtors' estates). Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. The U.S. Trustee and the Creditors' Committee (and any subsequent trustee of the Debtors' estates) may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the Postpetition Agent; provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the Postpetition Agent no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses. Any hearing on an objection to payment of any fees, costs and expenses of the Postpetition Agent set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection. The Debtors shall indemnify the Postpetition Agent and the Postpetition Lenders (and other applicable parties) to the extent set forth in the Postpetition Loan Documents, including,

without limitation, as provided in Section 1.13 (Indemnity) of the Postpetition Credit Agreement. All such unpaid fees, costs, expenses, charges and indemnities that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee or the Creditors' Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute Postpetition Obligations and shall be secured by the Postpetition Collateral as specified in this Order.  Any and all fees, commissions, costs and expenses paid prior to the Petition Date by any Debtor to the Postpetition Agent or Postpetition Lenders in connection with or with respect to the Postpetition Facility, Postpetition Credit Agreement or other Postpetition Loan Documents are hereby approved in full.

7.    <u>Maximum Amount</u>.  Subject to the terms and conditions set forth in this Order and in the Postpetition Loan Documents, the Debtors may use the proceeds of the Postpetition Facility and the Cash Collateral solely to: (i) pay outstanding Postpetition Obligations as provided in the Postpetition Loan Documents and this Order, (ii) promptly repay the Special Accommodation Loans in full as provided in <u>paragraph 4</u> above, (iii) make the adequate protection payments required under this Order, and (iv) fund general corporate and working capital requirements of the Debtors constituting administrative expenses in the Chapter 11 Cases, in each case in accordance with the Approved Budget and the terms of the Postpetition Loan Documents.  The aggregate principal amount of Revolving Loans available under the Postpetition Credit Agreement shall not at any time exceed $26,500,000 without further order of this Court (the "**Maximum Amount**"), <u>provided</u>, <u>however</u>, that from and after the entry of this Order and prior to the entry of the Final Order, the Maximum Amount shall be limited to $24,000,000.  Nothing in this <u>paragraph 7</u> shall alter or affect the Debtors' authority to fund the Employee Programs Account or make the Permitted Payments to the extent authorized by <u>paragraph 4(d)</u> of this Order.

8.    <u>Approved Budget</u>.

a.    <u>Generally</u>.  Attached hereto as <u>Exhibit A</u> is a 13-week budget (the "**Initial Approved Budget**") which reflects on a line-item basis the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week of the Initial Approved Budget.  The Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by Debtors and approved by the Postpetition Agent in writing (each such additional budget, a "**Supplemental Approved Budget**"), in each case without further notice, motion or application to, order of, or hearing before, this Court (except as required by <u>paragraph 3</u> above).  The aggregate, without duplication, of all items in the Initial Approved Budget and any Supplemental Approved Budgets shall constitute an "**Approved Budget**."

b.    <u>Budget Covenants</u>.  On a weekly basis for the period from the Petition Date through the last day of the week of determination, actual receipts of and disbursements by the Debtors shall comply with Section 5.13 of the Postpetition Credit Agreement.  The Debtors shall provide to the Postpetition Agent, so as actually to be received within two (2) business days following the end of each week, weekly line-by-line certified variance reports for the preceding weekly period and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Approved Budget, in form and scope reasonably acceptable to the Postpetition Agent.  The Debtors shall, on the second (2nd) Business Day of each week from the Closing Date until the Commitment Termination Date, deliver to the Postpetition Agent an updated, "rolling" 13-week budget which sets forth by line item updated projected receipts and disbursements for the Debtors during the period commencing from the end of the previous week through and including thirteen weeks thereafter; <u>provided</u> that the Debtors shall still be subject to and be governed by the terms of the Approved Budget then in effect and the Postpetition Agent, Prepetition Senior Agent, Postpetition Lenders and Prepetition Senior Lenders shall, as applicable, have no

obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto.  The Debtors shall, by no later than five (5) Business Days prior to the end of the period covered by the then applicable Approved Budget, deliver to the Postpetition Agent a Supplemental Approved Budget.  The Debtors acknowledge and agree that (i) the incurrence or payment by the Debtors of expenses (x) other than the itemized amounts set forth in the Approved Budget or (y) in excess of the variances permitted by Section 5.13 of the Postpetition Credit Agreement, or (ii) other violation of the terms and condition of this sub-paragraph (b) (each a "**Budget Default**"), shall constitute an Event of Default (as defined in Section 8.1 of the Postpetition Credit Agreement).

9.    Postpetition Liens.  As security for the full and timely payment of the Postpetition Obligations, the Postpetition Agent, for the benefit of the Postpetition Agent and the Postpetition Lenders, is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding, enforceable, unavoidable and fully perfected security interests, liens and mortgages (collectively, the "**Postpetition Liens**") in and upon all pre-petition and post-petition real and personal, tangible and intangible property and assets of each of the Debtors of any kind or nature whatsoever, wherever located, whether now existing or hereafter acquired or arising, including, without limitation, all cash (including all Cash Collateral, wherever held, including in the Employee Programs Account), cash equivalents, bank accounts (including the Employee Programs Account), accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, one hundred percent (100%) of the capital stock of each Debtor's direct and indirect domestic and foreign subsidiaries, all inter-company notes held by the Debtors, trademarks, trade names, licenses, rights to payment including tax refund claims, and causes of action (exclusive of actions for preferences, fraudulent conveyances, and other avoidance power claims under sections 544,

545, 547, 548, 549 and 550 of the Bankruptcy Code (the "**Avoidance Actions**") and the proceeds and recoveries from the Avoidance Actions (the "**Avoidance Action Proceeds**")), and the Prepetition Senior Collateral, and the proceeds, products, offspring, rents and profits of all of the foregoing, including insurance proceeds (all of the foregoing, the "**Postpetition Collateral**").

          10.      <u>Other Priority Matters</u>.  Subject to the Carve-Out, the Postpetition Liens: (a) shall, pursuant to section 364(c)(2) of the Bankruptcy Code, constitute first priority security interests in and liens on all Postpetition Collateral that is not otherwise subject to any Prior Lien; (b) shall, pursuant to section 364(d)(1) of the Bankruptcy Code, be senior to and prime (i) the Prepetition Senior Liens and Prepetition Junior Liens, and (ii) the Adequate Protection Senior Liens and Adequate Protection Junior Liens (the liens described in clauses (i) and (ii) above, collectively, the "**Primed Liens**"); and (c) shall, pursuant to section 364(c)(3) of the Bankruptcy Code, be immediately junior in priority to any and all Prior Liens (other than the Primed Liens) on or in the Postpetition Collateral.  Other than the Carve-Out and Prior Liens, the Postpetition Liens shall at all times be senior to the following (collectively, the "**Subordinate Liens and Related Rights**"):  (i) the rights of any Debtor and any successor trustee or estate representative in the Chapter 11 Cases or any other subsequent proceedings under the Bankruptcy Code, including, without limitation, any Chapter 7 proceeding if any of the Chapter 11 Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the "**Successor Case**"); (ii) any inter-company claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, and (iii) any security interest or lien which is either (x) avoided or otherwise preserved for the benefit of any Debtor's estate under section 551 or any other provision of the Bankruptcy Code, or (y) junior or otherwise subordinate to the Prepetition Senior Liens.  The Postpetition Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  Other than the Carve-Out and Prior Liens, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal

to or pari passu with the Postpetition Liens in these Chapter 11 Cases or any Successor Case without the express written consent of the Postpetition Agent given in accordance with the Postpetition Credit Agreement (which consent may be withheld in its sole discretion). Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to dispute the validity, priority, enforceability and perfection of the Prior Liens.

11.    Super-Priority Claim.    In addition to the Postpetition Liens, the Postpetition Agent and Postpetition Lenders are hereby granted, for all Postpetition Obligations, an allowed super-priority administrative expense claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "**Super-Priority Claim**") against each Debtor and its respective estate. Except for the Carve-Out, the Super-Priority Claim shall have priority over all other costs and expenses of administration of any kind (and no cost or expense of administration shall be senior to, equal to, or pari passu with, the Super-Priority Claim), including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise, including, without limitation, the Adequate Protection Senior Claims and Adequate Protection Junior Claims). The Super-Priority Claim shall at all times be senior to the following (collectively, the "**Subordinate Claims and Related Rights**"): (i) the rights of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (ii) any successor trustee or estate representative in the Chapter 11 Cases or any Successor Case, or (iii) except for the Carve-Out, any other creditor or party in interest in the Chapter 11 Cases or any Successor Case. The Super-Priority Claim, the Adequate Protection Senior Claim (as defined below) and the Adequate Protection Junior Claim (as defined below) shall not be payable from, or have recourse to, the Avoidance Actions or Avoidance Action Proceeds.

12.    No Reduction or Impairment.    No obligation or liability owed, or payment, transfer or grant of security, to Postpetition Agent or any Postpetition Lender under this Order or

any other Postpetition Loan Document shall be stayed, restrained, voidable, impaired, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or be subject to any defense, reduction, setoff, recoupment or counterclaim, whether in the Chapter 11 Cases or any Successor Case.  Subject to paragraph 30 below, the release of claims by the Debtors against the Postpetition Agent and the Postpetition Lenders (and other applicable parties) set forth in Section 1.21 (Release) of the Postpetition Credit Agreement is hereby approved.  The Postpetition Obligations, once paid by any Debtor, shall be non-refundable.

13.   Carve-Out.

a.   Generally.  Notwithstanding anything to the contrary contained in this Order, upon the occurrence of the Carve-Out Trigger Date (as defined below), the liens and claims granted to any of the Postpetition Agent, Postpetition Lenders, Prepetition Agents, or Prepetition Secured Lenders in this Order, the Postpetition Loan Documents,  the Prepetition Senior Loan Documents and/or the Prepetition Junior Loan Documents shall be subject to the payment, without duplication, of the following fees and claims (collectively, the "**Carve-Out**"), but only to the extent that there are not sufficient, unencumbered funds in the Debtors' estates to pay such amounts at the time payment is required to be made:

(i)   with respect to claims incurred prior to the Carve-Out Trigger Date, the claims of (x) professionals of the Debtors whose retention is approved by this Court during the Chapter 11 Cases pursuant to Sections 327 and 328 of the Bankruptcy Code (the "**Debtors' Professionals**") for unpaid fees and expenses which were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date; and (y) professionals of any statutory committees appointed in the Chapter 11 Cases (or any subsequent trustee of the Debtors' estates) whose retention is approved by this Court during the Chapter 11 Cases pursuant to Section 1103 of the Bankruptcy Code (the "**Committee's Professionals**" and together with the Debtors' Professionals, the "**Retained Professionals**") for unpaid fees and expenses which were incurred on and after the Petition Date and prior to the Carve-Out Trigger Date; provided that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code, comply with the Approved

Budget and are not excluded from the Carve-Out under <u>paragraph 29</u> of this Order (such fees and expenses, the "**Pre-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Pre-Carve-Out Trigger Date Amount**");

(ii)    with respect to claims incurred on or after the Carve-Out Trigger Date, the claims of Retained Professionals for unpaid fees and expenses which were incurred on and after the Carve-Out Trigger Date; <u>provided</u> that, in each case, such fees and expenses of the Retained Professionals are ultimately allowed on a final basis by this Court under sections 330 and 331 of the Bankruptcy Code, are not excluded from the Carve-Out under <u>paragraph 29</u> of this Order and do not exceed $250,000 in the aggregate for all of the Retained Professionals (such fees and expenses, the "**Post-Carve-Out Trigger Date Expenses**" and the permitted amount thereof, the "**Post-Carve-Out Trigger Date Amount**" and, together with the Pre-Carve-Out Trigger Date Amount, the "**Carve-Out Amount**"); and

(iii)    unpaid fees payable to the United States Trustee and Clerk of the Bankruptcy Court pursuant to Section 1930 of Title 28 of the United States Code.

b.    <u>Carve-Out Trigger Date</u>.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the Postpetition Agent provides written notice to the Debtors that the Carve-Out is invoked, which notice shall be delivered only on or after (i) the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement or the Commitment Termination Date and (ii) the termination of the Postpetition Agent's or Postpetition Lenders' obligations to make loans or provide other extensions of credit under the Postpetition Credit Agreement.

c.    <u>Carve-Out Trigger Date Amounts</u>.  Subject to the terms and conditions of this Order and the Postpetition Loan Documents, the Debtors shall be permitted, during the time period prior to the Carve-Out Trigger Date, to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, as the same may be due and payable, that constitute Pre-Carve-Out Trigger Date Expenses and such payments shall not reduce or be deemed to reduce the Post-Carve-Out Trigger Date Amount.  On and after the Carve-Out Trigger Date, the dollar amounts available to be paid under the Carve-Out Amount shall be reduced, dollar-for-dollar, by the aggregate amount of payments made to the Retained Professionals on

account of their Pre-Carve-Out Trigger Date Expenses or Post-Carve-Out Trigger Date Expenses (whether from Cash Collateral, any proceeds of the Postpetition Facility, or otherwise).

        d.    <u>Reservation of Rights</u>.  Payment of any fees and expenses of the Retained Professionals pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the Postpetition Agent, Postpetition Lenders, Prepetition Agents, and/or Prepetition Secured Lenders or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the Postpetition Collateral or Prepetition Senior Collateral (or their respective claims against the Debtors).  The Postpetition Agent, Postpetition Lenders, Prepetition Agents, and Prepetition Secured Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals (or of any other Person) incurred in connection with the Chapter 11 Cases or any Successor Case, and nothing in this Order or otherwise shall be construed to obligate such parties in any way to pay compensation to or to reimburse expenses of any Retained Professional or any other Person, or to ensure that any Debtor has sufficient funds to pay such compensation or reimbursement.  Nothing herein shall impair, or be construed to impair, the ability of any party to object to any of the fees, expenses, reimbursement or compensation of the Retained Professionals.

        14.    <u>Cash Collection Procedures</u>.

        a.    <u>Generally</u>.  From and after the date of the entry of this Order, all collections and proceeds of any Postpetition Collateral or Prepetition Senior Collateral or services provided by any Debtor and all Cash Collateral which shall at any time come into the possession, custody or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in the same bank accounts into which the collections and proceeds of the Prepetition Senior Collateral were deposited under the Prepetition Senior Credit Agreement (or in such other accounts as are designated by Postpetition Agent from time to time), and such collections and proceeds upon such deposit shall be applied, subject to

the Carve-Out and any Prior Liens, against the Postpetition Obligations and Prepetition Senior Obligations as provided in the Postpetition Loan Documents and this Order.  The Debtors shall promptly enter into any additional agreements providing for the establishment of lock boxes, blocked accounts, or similar arrangements in favor of the Postpetition Agent for purposes of facilitating cash collections from the Debtors in accordance with the terms of the Postpetition Credit Agreement.

b.    <u>Existing Accounts</u>.    The Prepetition Agents and the Prepetition Secured Lenders shall immediately share dominion and control with the Postpetition Agent with respect to each depository account of the Debtors or other third party that was subject to a deposit account control agreement or similar agreement with or in favor of any of the Prepetition Agents or the Prepetition Secured Lenders as of the Petition Date, and such agreements shall hereafter be additionally enforceable by the Postpetition Agent against, and binding upon, each depository institution party thereto until the Postpetition Obligations have been paid in full in cash and the Postpetition Credit Agreement shall have been terminated, after which such agreements shall again be solely enforceable by the Prepetition Agents and the Prepetition Secured Lenders, as applicable.

15.    <u>Non-Ordinary Course Dispositions</u>.    The Debtors shall comply in all respects with the sale process covenants and deadlines set forth in Section 5.14 of the Postpetition Credit Agreement, for which time is of the essence.  Subject to the terms and conditions of the Prepetition Intercreditor Agreement, the respective rights of the Postpetition Agent, Postpetition Lenders, Prepetition Agents and Prepetition Secured Lenders to credit bid all or any portion of the Postpetition Obligations, Prepetition Senior Obligations and Prepetition Junior Obligations (as applicable) under section 363(k) of the Bankruptcy Code and other applicable law in connection with any proposed sale of Prepetition Senior Collateral or Postpetition Collateral (other than the sale of Inventory in the ordinary course of any Debtor's business), or to object to such proposed sale or other Asset Disposition, shall be preserved

through the closing of such sale or other Asset Disposition.  Any and all proceeds arising from or in connection with any sale or lease of Postpetition Collateral or Prepetition Senior Collateral, or other Asset Disposition (other than the sale of Inventory in the ordinary course of any Debtor's business), including proceeds arising from or in connection with any Asset Disposition described in Section 5.14 of the Postpetition Credit Agreement, shall, subject to the terms of the Postpetition Loan Documents, be immediately transferred to Postpetition Agent or Prepetition Senior Agent (as applicable) for permanent application to the Postpetition Obligations or Prepetition Senior Obligations in accordance with the terms and conditions of the Postpetition Loan Documents and Prepetition Senior Loan Documents (as applicable).

16.    <u>Landlord Agreements</u>.    Upon entry of the Final Order, all landlord agreements to which either Prepetition Agent is a party shall be deemed amended to include the Postpetition Agent as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the Postpetition Agent against, and binding upon, each landlord party thereto in accordance with, and subject to, its respective terms and conditions until the Postpetition Obligations shall have been paid in full in cash and the Postpetition Credit Agreement shall have been terminated, after which such agreements shall again be solely enforceable by the applicable Prepetition Agent.

17.    <u>Adequate Protection Senior Obligations</u>.  Until the indefeasible repayment in full in cash of the Prepetition Senior Obligations, as adequate protection for the Prepetition Senior Agent's interest in the Prepetition Senior Collateral, the Prepetition Senior Agent and Prepetition Senior Lenders are hereby granted the following:

a.    <u>Replacement Liens</u>.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Senior Agent, for its benefit and the benefit of the Prepetition Senior Lenders, is hereby granted by each Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the Postpetition Collateral (the "**<u>Adequate Protection Senior Liens</u>**").  The Adequate Protection Senior Liens shall (a) be

subordinate only to: (1) the Carve-Out, (2) the Postpetition Liens and (3) the Prior Liens; and (b) be senior and superior to the Subordinate Liens and Related Rights.  The Adequate Protection Senior Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any Successor Case.  Except as described in clause (a) above, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or pari passu with the Adequate Protection Senior Liens in these Chapter 11 Cases or any Successor Case without the prior written consent of the Prepetition Senior Agent given in accordance with the Prepetition Senior Credit Agreement (which consent may be withheld in its sole discretion).

        b.      Adequate Protection Senior Claim.  Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Senior Agent and the Prepetition Senior Lenders shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Senior Claim**") against each Debtor and its respective estate.  The Adequate Protection Senior Claim shall: (a) be subordinate only to: (1) the Carve-Out, and (2) the Super-Priority Claim; and (b) be senior and superior to the Subordinate Claims and Related Rights.  Except as described in clause (a) above, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in these Chapter 11 Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or pari passu with, the Adequate Protection Senior Claim.

        c.      Current Payment.  As further adequate protection, and without limiting any rights of the Prepetition Senior Agent and the Prepetition Senior Lenders under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition Senior Agent and Prepetition Senior Lenders to the entry of this Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall, on the Closing Date and on a monthly basis thereafter, pay or reimburse the Prepetition Senior Agent for any and all of its accrued and past-due fees, costs,

expenses and charges payable under the Prepetition Senior Loan Documents, including without limitation, the reasonable attorneys' and other fees and expenses of the Prepetition Senior Agent as provided in Section 1.3(e) of the Prepetition Senior Credit Agreement, whether accrued prepetition or postpetition, all without further notice, motion or application to, order of, or hearing before, this Court.

           d.    <u>Adequate Protection Senior Obligations</u>.  The Adequate Protection Senior Liens and Adequate Protection Senior Claim shall secure the payment of the Prepetition Senior Obligations in an amount equal to any diminution in the value of the Prepetition Senior Agent's interests in the Prepetition Senior Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Senior Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Senior Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Senior Collateral or otherwise.

           18.    <u>Adequate Protection Junior Obligations</u>.  Until the indefeasible repayment in full in cash of the Prepetition Junior Obligations, as adequate protection for the Prepetition Junior Agent's interest in the Prepetition Senior Collateral, the Prepetition Junior Agent and Prepetition Junior Lenders are hereby granted the following:

           a.    <u>Replacement Liens</u>.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Prepetition Junior Agent, for its benefit and the benefit of the Prepetition Junior Lenders, is hereby granted by each Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the Postpetition Collateral (the "**Adequate Protection Junior Liens**").  The Adequate Protection Junior Liens shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the

Adequate Protection Senior Liens under this Order, except that such Adequate Protection Junior Liens shall be junior and subordinate to the Prepetition Senior Liens and the Adequate Protection Senior Liens.

   b.    Adequate Protection Junior Claim.  Pursuant to section 507(b) of the Bankruptcy Code, the Prepetition Junior Agent and the Prepetition Junior Lenders shall have an allowed super-priority administrative expense claim (the "**Adequate Protection Junior Claim**") against each Debtor and its respective estate.  The Adequate Protection Junior Claim shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the Adequate Protection Senior Claim under this Order, except that such Adequate Protection Junior Claim shall be junior and subordinate to the Adequate Protection Senior Claim.

   c.    Adequate Protection Junior Obligations.  The Adequate Protection Junior Liens and Adequate Protection Junior Claim shall secure the payment of the Prepetition Junior Obligations in an amount equal to any diminution in the value of the Prepetition Junior Agent's interests in the Prepetition Senior Collateral from and after the Petition Date (the amount of such diminution, the "**Adequate Protection Junior Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtors of the Prepetition Senior Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the Postpetition Liens, which will prime the Primed Liens, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Senior Collateral or otherwise.

   19.    Subordination of Prepetition Obligations.  Notwithstanding anything in this Order to the contrary, any and all claims and liens of the Postpetition Agent and Postpetition Lenders arising with respect to or in connection with this Order or Postpetition Loan Documents (the "**Superior Obligations**"), including, without limitation, the Postpetition Obligations, Postpetition Liens, and Super-Priority Claims, must and shall be indefeasibly paid and satisfied

in full in cash and all lending commitments under the Postpetition Loan Documents must be terminated before any payment or distribution, whether pursuant to a plan of reorganization, setoff or otherwise, may or can be made to or retained by any of the Prepetition Agents or Prepetition Secured Lenders (in their respective capacities as such) arising with respect to or in connection with this Order (except with respect to any payments described in paragraph 17(c) of this Order), the Prepetition Senior Loan Documents, and/or the Prepetition Junior Loan Documents (collectively, the "**Subordinate Obligations**").   Any payment or distribution, whether in cash, securities or other property, which would otherwise, but for the terms hereof, be payable or deliverable to any Prepetition Agent or any Prepetition Secured Lender in respect of or in connection with any Subordinate Obligations shall be paid or delivered directly to the Postpetition Agent (to be held and/or applied by Postpetition Agent in accordance with the terms of this Order and the Postpetition Credit Agreement) until all Superior Obligations are indefeasibly paid and satisfied in full in cash and all commitments to lend under the Postpetition Credit Agreement shall have been terminated.

20.    Waiver of Section 506(c) Claims.  Subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any Person or entity shall be imposed against the Postpetition Agent, Postpetition Lenders, Prepetition Agents or Prepetition Secured Lenders, their respective claims or the Prepetition Senior Collateral or Postpetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby irrevocably waive any and all such rights, remedies and benefits under section 506(c) of the Bankruptcy Code.

21.    Other Waivers.  Except for the Carve-Out and Prior Liens or as otherwise permitted by the Prepetition Intercreditor Agreement, no claim or lien having a priority superior to or pari passu with those granted pursuant to this Order to the Postpetition Agent, the Postpetition Lenders, the Prepetition Agents and the Prepetition Secured Lenders, respectively, shall be granted or allowed while any portion of the Postpetition Facility (or any refinancing

thereof), the Commitments (as defined in the Postpetition Credit Agreement) thereunder, the Postpetition Obligations, the Adequate Protection Senior Obligations or the Adequate Protection Junior Obligations remain outstanding.  Except as expressly permitted by the Postpetition Credit Agreement, but subject to the terms and conditions of the Prepetition Intercreditor Agreement, the Debtors shall not grant mortgages, security interests, or liens in the Postpetition Collateral to any parties other than the Postpetition Agent and Postpetition Lenders pursuant to section 364(d) of the Bankruptcy Code or otherwise.

> 22.   <u>Automatic Perfection</u>.

> a.      The Postpetition Liens, the Adequate Protection Senior Liens and the Adequate Protection Junior Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further notice, act or action of or by any Person or entity, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents.  If the Postpetition Agent or either Prepetition Agent hereafter requests that the Debtors execute and deliver to it any financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such party to be reasonably necessary or desirable to further evidence the perfection of the liens and security interests provided under this Order, then the Debtors are hereby authorized and directed, at their sole cost and expense, to promptly execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Postpetition Agent and Prepetition Agents (as applicable) are hereby authorized to file or record such documents in their respective discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order, but with the priorities as set forth herein.  The Postpetition Agent and Prepetition Agents may (in their respective sole discretion), but shall not be required to, file a certified copy of this Order in any

filing or recording office in any state, county or other jurisdiction in which any Debtor has real or personal property and such filing or recording shall be accepted and shall constitute sufficient evidence of perfection of such applicable parties' interests in the Postpetition Collateral at the time and on the date of entry of this Order, but with the priorities as set forth herein.

b.    Notwithstanding anything in this Order to the contrary, (i) the Prepetition Agents and Prepetition Secured Lenders shall not request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in this Order, unless the Postpetition Agent shall theretofore have done so or consented thereto and (ii) the Prepetition Junior Agent and Prepetition Junior Lenders shall not request or file such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm the perfection of such security interests and liens granted in this Order, unless the Prepetition Senior Agent shall theretofore have done so or consented thereto.

c.    To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or perfection of the security interests and liens authorized or created under or in connection with this Order or the Postpetition Loan Documents, or otherwise would impose filing or registration requirements or fees and charges with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court; provided that the Postpetition Agent and Prepetition Agents may still take such steps as they wish to perfect their respective security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Order.

23.    Default Under Other Documents.  The Postpetition Agent, the Prepetition Agents, the Postpetition Lenders and the Prepetition Secured Lenders shall have all rights and remedies with respect to the Debtors and any other rights, remedies, benefits and privileges as

are set forth in this Order and the Postpetition Loan Documents (as applicable). Except as otherwise expressly provided herein, notwithstanding anything to the contrary contained in any prepetition or postpetition agreement, contract, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated or bound, any provision that restricts, conditions, prohibits, limits or impairs in any way any Debtor from granting the Postpetition Agent, the Prepetition Agents, the Postpetition Lenders and the Prepetition Secured Lenders the postpetition security interests or liens upon any of its assets, properties or other Postpetition Collateral or otherwise entering into and complying with all of the terms, conditions and provisions of this Order and Postpetition Loan Documents shall be unenforceable against such Debtor, and therefore, shall not adversely affect the validity, priority, perfection or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Postpetition Agent, the Prepetition Agents, the Postpetition Lenders and the Prepetition Secured Lenders pursuant to this Order and/or the Postpetition Loan Documents.

24. <u>Successors and Assigns</u>. The provisions of this Order and the Postpetition Loan Documents shall, as applicable, be binding upon and inure to the benefit of the Postpetition Agent, the Prepetition Agents, the Postpetition Lenders, the Prepetition Secured Lenders, and the Debtors and their respective estates, and their respective successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of any of the Debtors or their estates, whether in these Chapter 11 Cases or any Successor Case.

25. <u>Survival</u>. The provisions of this Order and any actions taken pursuant thereto: (a) shall survive the entry of any order: (i) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (ii) substantively consolidating any of the Debtors or their respective estates; or (iii) dismissing or closing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order.

26. <u>Section 364(e); Effect of Modification or Appeal</u>. Based on the findings set forth in this Order, in consideration for the financing provided under Postpetition Facility, the

Postpetition Agent and the Postpetition Lenders are entitled to, and hereby are granted, the full rights, benefits, privileges and protections of, and provided by, section 364(e) of the Bankruptcy Code with respect to the Postpetition Obligations (and related liens, claims, rights, remedies and benefits) created or authorized by this Order in the event that this Order or any authorization or approval contained herein is subsequently stayed, vacated, reversed, amended or modified on appeal.  Any subsequent stay, modification, reversal, amendment or vacation of this Order shall not alter, modify or affect the validity, priority, perfection or enforceability of any claim, lien, or security interest of the Postpetition Agent, the Prepetition Agents, the Postpetition Lenders, or the Prepetition Secured Lenders authorized, created or granted pursuant to this Order and outstanding immediately prior to the actual receipt of written notice by the Postpetition Agent and Prepetition Agents of the effective date of such stay, modification, reversal, amendment or vacation.  Notwithstanding any such stay, modification, reversal, amendment or vacation, all obligations and other financial accommodations made pursuant to this Order, all Postpetition Obligations incurred and uses of Cash Collateral permitted by the Debtors pursuant hereto prior to the actual receipt of written notice by the Postpetition Agent and Prepetition Agents of the effective date of such stay, modification, reversal, amendment or vacation, shall be governed in all respects by the original provisions of this Order and the Postpetition Agent, the Prepetition Agents, the Postpetition Lenders, and the Prepetition Secured Lenders shall be entitled to all of the rights, privileges, remedies, protections and benefits contained or granted in section 364(e) of the Bankruptcy Code, the Postpetition Loan Documents and this Order (as applicable), including, without limitation, the Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Liens, Adequate Protection Senior Claims, Adequate Protection Junior Liens and Adequate Protection Senior Claims.

27.    <u>Modification of Automatic Stay; Other Remedies</u>.

a.    Subject to <u>sub-paragraph (c)</u> below, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to the Postpetition Agent and

Postpetition Lenders to the extent necessary to permit them to perform in accordance with, provide any notice under, and exercise, enjoy and enforce their respective rights, benefits, privileges and remedies pursuant to this Order and the other Postpetition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court. Subject to sub-paragraph (c) below, regardless of any change in circumstances (whether or not foreseeable), neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the Postpetition Agent's or Postpetition Lenders' exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies as and to the extent provided in this Order.

b.      Subject to sub-paragraph (c) below, the Postpetition Agent and Postpetition Lenders are hereby authorized and granted leave from the automatic stay under section 362 of the Bankruptcy Code to do the following on and after the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement (or otherwise on and after the Commitment Termination Date), in each case without further notice, motion or application to, order of, or hearing before, this Court:

> (i)      terminate any obligation of Postpetition Agent or Postpetition Lenders to make loans or other extensions of credit under the Postpetition Loan Documents or this Order;
>
> (ii)     declare all Postpetition Obligations immediately due and payable in full in cash, and require that all letters of credit and other contingent obligations related thereto, if any, to be cash collateralized or terminated without liability to Postpetition Agent or Postpetition Lenders;
>
> (iii)    revoke the Debtors' right, if any, under this Order and/or the other Postpetition Loan Documents to use Cash Collateral; and
>
> (iv)     receive and apply proceeds of Postpetition Collateral to the Postpetition Obligations in accordance with the terms and conditions of this Order and the Postpetition Loan Documents.

c.    On and after the occurrence and continuation of an Event of Default under the Postpetition Credit Agreement (or otherwise on and after the Commitment Termination Date), and after obtaining Court approval upon notice and hearing, the Postpetition Agent and the Postpetition Lenders shall be entitled to foreclose or otherwise enforce their respective liens on any or all of the Postpetition Collateral and/or to exercise any other default-related rights and remedies under the Postpetition Loan Documents, this Order and applicable law to the extent not already permitted pursuant to sub-paragraph (b) above.  The parties shall use their best efforts to schedule and attend an expedited Court hearing within three (3) days of notice of the Event of Default or Commitment Termination Date being given to the Debtors. The Debtors acknowledge and agree, and this Court hereby orders, that the only issue to be determined and decided at any Court hearing regarding such matters is whether an Event of Default has occurred and is continuing under the Postpetition Credit Agreement or whether the Commitment Termination Date has occurred and notice of such hearing need only be given to the Debtors, any statutory committee of unsecured creditors (and any subsequent trustee of the Debtors' estates) and the U.S. Trustee.

d.    Nothing in this paragraph 27 shall alter or affect the Debtors' authority to fund the Employee Programs Account or make the Permitted Payments to the extent authorized by paragraph 4(d) of this Order.

28.    No Waiver of Rights.

a.    Generally.    Without limiting the terms and conditions of paragraphs 9 through 12  and 19 of this Order, none of the Postpetition Agent, Postpetition Lenders, Prepetition Agents or Prepetition Secured Lenders waives, and each expressly reserves, any and all claims, causes of action, defenses, rights and remedies it has or may have pursuant to any or all of the Prepetition Senior Loan Documents, the Prepetition Junior Loan Documents, the Postpetition Loan Documents, the Prepetition Intercreditor Agreement, any other inter-creditor

or subordination agreement, the Bankruptcy Code and/or under applicable law against or with respect to any Debtor and any other Person or entity.

               b.     <u>Relative Priorities; Prepetition Intercreditor Agreement</u>.    In determining the relative priorities, rights and remedies of the Prepetition Agents and Prepetition Secured Parties (including, without limitation, the relative priorities and rights of such parties with respect to the replacement liens and administrative expense claims granted, or amounts payable, by the Debtors under this Order and the modification of the automatic stay), such priorities, rights and remedies shall, pursuant to section 510 of the Bankruptcy Code, continue to be governed by the Prepetition Intercreditor Agreement, and, without limiting the terms and conditions of <u>paragraphs 9</u> through <u>12</u>  and <u>19</u> of this Order, nothing in this Order or the Postpetition Loan Documents shall, or shall be deemed to, alter, amend, modify, impair, diminish or otherwise affect the terms and conditions of the Prepetition Intercreditor Agreement, which terms and conditions remain in full force and effect as between or among such parties. Furthermore, pursuant to section 510 of the Bankruptcy Code, any other inter-creditor or subordination agreement between and/or among the Prepetition Agents, any Prepetition Secured Lender, any Debtor and any other non-Debtor party thereto, and any other applicable inter-creditor or subordination provisions contained in any credit agreement, security agreement, indenture or related document, remain in full force and effect and are not amended, altered or modified by the terms of this Order or the Postpetition Loan Documents.

               c.     <u>Additional Rights Preserved</u>.  Without limiting the generality of this <u>paragraph 28</u>, but subject to the Prepetition Intercreditor Agreement, the Postpetition Agent, Postpetition Lenders, Prepetition Agents and Prepetition Secured Lenders may, as applicable, petition this Court for any such additional protection they may reasonably require with respect to the Prepetition Senior Obligations, the Prepetition Junior Obligations, the Postpetition Obligations, or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Senior Collateral.  Except as otherwise set

forth herein, but subject to the Prepetition Intercreditor Agreement, entry of this Order shall not in any way constitute agreement, consent, or acquiescence by the Postpetition Agent, Postpetition Lenders, Prepetition Agents or Prepetition Secured Lenders to the terms of any plan of reorganization filed in the Chapter 11 Cases.

29.     <u>Restriction on Use of Lenders' Funds</u>.   No portion of the Postpetition Facility, the Postpetition Collateral, the Prepetition Senior Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims, actions or causes of action against or adverse to the interests of any of the Postpetition Agent, Postpetition Lenders, Prepetition Agents, or Prepetition Secured Lenders, including, without limitation, any action challenging or raising any defenses to the Postpetition Obligations, the Prepetition Senior Obligations, the Prepetition Junior Obligations, the Postpetition Liens, the Prepetition Senior Liens or the Prepetition Junior Liens; <u>provided</u>, that the foregoing restriction shall not apply to the reasonable fees and expenses of the Retained Professionals incurred in connection with any determination of this Court (x) under section 506(a) of the Bankruptcy Code that all or any portion of the Prepetition Senior Obligations and/or Prepetition Junior Obligations constitute unsecured deficiency claims or (y) regarding the amount, if any, of the Adequate Protection Senior Obligations and Adequate Protection Junior Obligations; <u>provided</u>, <u>further</u>, that no more than $25,000 in the aggregate of the proceeds of the Postpetition Facility or the Postpetition Collateral (including the Cash Collateral) may be used by the Creditors' Committee (and any subsequent trustee of the Debtors' estates) to investigate the Prepetition Senior Obligations, the Prepetition Junior Obligations, the Prepetition Senior Liens, and the Prepetition Junior Liens.

30.     <u>Release of Claims Against Prepetition Agents and Prepetition Secured Lenders</u>.

a.      <u>Generally</u>.  The stipulations and admissions contained in <u>Paragraph</u> <u>D</u> of this Order, and repayment of the Special Accommodation Loans, shall be binding on all parties in interest, including, without limitation, the Creditors' Committee (and any subsequent trustee of the Debtors' estates), unless, and solely to the extent that, (a) the Creditors' Committee (or any subsequent trustee of the Debtors' estates), or another party in interest with standing and requisite authority, has timely filed a complaint and commenced an adversary proceeding (subject to the limitations set forth in <u>paragraph 29</u> of this Order) challenging the amount, validity, or enforceability of the Prepetition Senior Obligations or the Prepetition Junior Obligations, or the perfection or priority of the Prepetition Senior Liens or the Prepetition Junior Liens, or otherwise asserting any claims or causes of action on behalf of the Debtors' estates against (i) the Prepetition Senior Agent or the Prepetition Senior Lenders relating to the Prepetition Senior Obligations or (ii) the Prepetition Junior Agent or the Prepetition Junior Lenders relating to the Prepetition Junior Obligations, in each case no later than the earlier of (x) forty-five (45) days after the date of appointment of the Creditors' Committee or (y) sixty (60) days after the Petition Date (such earlier date, the "**Complaint Filing Deadline**"), and (b) this Court rules in favor of the plaintiff in any such timely and properly commenced adversary proceeding.   If no such adversary proceeding is timely and properly commenced by the Complaint Filing Deadline, or to the extent such adversary proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the acknowledgments of the Debtors contained in <u>paragraph D</u> of this Order, then, without the requirement or need to file any proof of claim with respect thereto and without further notice, motion or application to, order of, or hearing before, this Court, but in all cases subject to the Prepetition Intercreditor Agreement and <u>paragraph 28</u> of this Order, the acknowledgments of the Debtors contained in <u>paragraph D</u> of

this Order, and repayment of the Special Accommodation Loans, shall be binding, conclusive and final on the Creditors' Committee (and any subsequent trustee of the Debtors' estates) and any other Person, entity or party-in-interest in the Chapter 11 Cases and any Successor Case and (i) the claims, liens and security interests of the Prepetition Agents and the Prepetition Secured Lenders shall be deemed to be finally allowed for all purposes in these Chapter 11 Cases and any Successor Case and shall not be subject to challenge by any party in interest as to validity, priority or otherwise (and the repayment of the Special Accommodation Loans shall not be subject to disgorgement, reduction or other challenge), and (ii) the Debtors and their estates shall be deemed to have forever released any and all claims or causes of action against the Prepetition Agents and the Prepetition Secured Lenders with respect to the Prepetition Senior Loan Documents, the Prepetition Junior Loan Documents, or any related transactions; provided that the Debtors and all other parties in interest reserve all of their respective rights as to the value of the Prepetition Senior Collateral and may seek and obtain at any time before or after the Complaint Filing Deadline a determination of this Court (x) under section 506(a) of the Bankruptcy Code that all or any portion of the Prepetition Senior Obligations and/or Prepetition Junior Obligations constitute unsecured deficiency claims and (y) regarding the amount, if any, of the Adequate Protection Senior Obligations and Adequate Protection Junior Obligations. Notwithstanding anything to the contrary herein, if any such adversary proceeding is timely commenced, the stipulations contained in paragraph D hereof shall nonetheless remain binding on all parties in interest and preclusive (as provided in the second sentence of this paragraph 30) except to the extent that such stipulations are expressly challenged in such adversary proceeding.

          b.    Special Accommodation Loans.  Notwithstanding any provisions of this Order or the Postpetition Loan Documents that permit or require the repayment of the

Special Accommodation Loans, (i) the principal amount of the Postpetition Obligations attributable to the repayment of the Special Accommodation Loans (the "**SAL Component**") shall be subject to disallowance or disgorgement (together with any postpetition interest earned thereon) to the same extent that, as of the Petition Date, an equivalent amount of the Special Accommodation Loans is not an allowed secured claim (whether because the Special Accommodation Loans or a portion thereof are disallowed or the liens allegedly securing the same are invalid or avoidable), in each case as determined pursuant to a final and non-appealable order of this Court issued pursuant to a complaint that is timely filed in accordance with ordering paragraph 30(a) above, and (ii) if the Prepetition Senior Obligations (to the extent they are allowed and subject to a valid, properly perfected and unavoidable security interest) and the Postpetition Obligations are ultimately paid in full, then this Court may upon motion of any party in interest made any time prior to thirty (30) days after repayment in full of the Prepetition Senior Obligations (or such other date as this Court may set by subsequent order), based upon the equities of the case and subject to the rights of the Prepetition Senior Agent and Prepetition Senior Lenders to object, order the disallowance and disgorgement of an amount of the repaid Prepetition Senior Obligations up to the amount of that portion of the repaid postpetition interest earned on the SAL Component that exceeds the amount of interest that would have been paid on the Special Accommodation Loans if the Special Accommodation Loans had not been repaid. All rights of the Prepetition Senior Lenders and the Prepetition Senior Agent with respect to the Special Accommodation Loans are expressly reserved.

31.    [intentionally deleted].

32.    <u>No Liability to Third Parties</u>.  In making decisions to advance loans to the Debtors, in administering any loans, in permitting the Debtors to use Cash Collateral, in

approving any budget or in taking any actions permitted by this Order or the Postpetition Loan Documents, as applicable, the Postpetition Agent, the Prepetition Agents, the Postpetition Lenders and the Prepetition Secured Lenders shall not (i) be deemed to be in control of the operations of any Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of any Debtor, and/or (ii) owe any fiduciary duty to any Debtor, its respective creditors or its respective estate, and their relationship with each Debtor shall not constitute or be deemed to constitute a joint venture or partnership with such Debtor.

33.    <u>Insurance</u>.  To the extent that GE Business, in its role as Prepetition Senior Agent, is listed as loss payee under the Debtors' insurance policies, GE Business, in its role as Postpetition Agent, is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in accordance with the terms and conditions of this Order and the Postpetition Loan Documents.

34.    <u>Master Proof of Claim</u>.  The Prepetition Senior Agent shall be authorized (but not required) to file a master proof of claim against the Debtors (the "**Master Proof of Claim**") on behalf of itself and the Prepetition Senior Lenders on account of their prepetition claims arising under the Prepetition Senior Loan Documents, and the Prepetition Senior Agent shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019.  Subject to the Prepetition Intercreditor Agreement, the Prepetition Junior Agent shall also be authorized (but not required) to file a Master Proof of Claim on behalf of itself and the Prepetition Junior Lenders on account of their prepetition claims arising under the Prepetition Junior Loan Documents, and the Prepetition Junior Agent also shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019.  If the Prepetition Senior Agent or the Prepetition Junior Agent so files a Master Proof of Claim against the Debtors, the Prepetition Senior Agent (on its behalf and on behalf of each Prepetition Senior Lender), or the Prepetition Junior Agent

(on its behalf and on behalf of each Prepetition Junior Lender), as the case may be, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the aggregate amount set forth therein in each of the Chapter 11 Cases and any Successor Case, and the claims of the Prepetition Senior Agent and each Prepetition Senior Lender, or the Prepetition Junior Agent and each Prepetition Junior Lenders, as the case may be, (and their respective successors and assigns) contained in the Master Proof of Claim shall be allowed or disallowed as if each such entity had filed a separate proof of claim in each Chapter 11 Case in the aggregate amount set forth therein. Subject to the Prepetition Intercreditor Agreement, the Prepetition Senior Agent and the Prepetition Junior Agent shall further be authorized to amend its respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. Subject to the Prepetition Intercreditor Agreement, the provisions set forth in this Paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of the Prepetition Senior Agent, the Prepetition Senior Lenders, the Prepetition Junior Agent, and the Prepetition Junior Lenders as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

35.     Final Hearing; Procedure for Objections to and Entry of Final Order. The Motion is set for a Final Hearing before this Court to be held in Courtroom 1401, Richard B. Russell Building, 75 Spring Street, Atlanta, Georgia 30303 at 10:00 A.M. Eastern time on August 28, 2008, at which time any party in interest may present any timely filed objections to the entry of the Final Order, which order shall be in form and substance acceptable to the Postpetition Agent in its sole discretion. The Debtors shall, in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules of this Court, promptly serve a notice of

the Final Hearing and entry of this Order, together with a copy of this Order, by electronic mail, facsimile, hand delivery or overnight delivery to the Notice Parties and Creditors' Committee (once appointed) or its counsel.  Such notice shall state that objections to the entry of the Final Order shall be in writing and shall be filed with the United States Bankruptcy Court for the Northern District of Georgia by no later than 4:00 P.M. (Prevailing Eastern time) on August 25, 2008 (the "**Objection Deadline**"), which objections shall be served so that the same are actually received by the Objection Deadline by: (i) David B. Kurzweil, Greenberg Traurig, LLP, The Forum, 3290 Northside Parkway, Suite 400, Atlanta, Georgia 30327, fax (678-553-2681), Kurzweild@gtlaw.com (counsel to the Debtors), (ii) David S. Heller, Latham & Watkins LLP, 233 South Wacker Drive, Sears Tower, Suite 5800, Chicago, IL 60606, fax (312-993-9767), david.heller@lw.com (counsel to the Postpetition Agent & Prepetition Senior Agent); and (iii) the office of the United States Trustee.  Any objections by creditors or other parties-in-interest to any of the provisions of the Final Order shall be deemed forever waived and barred unless timely filed and served in accordance with this paragraph.

**[END OF DOCUMENT]**

Prepared and presented by:

GREENBERG TRAURIG, LLP

By:  ____/s/  David B. Kurzweil_____
David B. Kurzweil (Ga. Bar No. 430492)
John J. Dyer (Ga. Bar No. 236844)
Greenberg Traurig, LLP
The Forum
3290 Northside Parkway, Suite 400
Atlanta, Georgia 30327
Telephone:  (678) 553-2100
Facsimile:  (678) 553-2212
Email: kurzweild@gtlaw.com
          dyerj@gtlaw.com

Proposed Counsel for Debtors and
Debtors-in-Possession

# <u>EXHIBIT A</u>

**[Initial Approved Budget]**

CONFIDENTIAL

**Atlantis Plastics, Inc.**
**Weekly Cash Flow Forecast**
**Sources & Uses**

(000's)

| Week ended | 8/8/2008 | 8/15/2008 | 8/22/2008 | 8/29/2008 | 9/5/2008 | 9/12/2008 | 9/19/2008 | 9/26/2008 | 10/3/2008 | 10/10/2008 | 10/17/2008 | 10/24/2008 | 10/31/2008 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts (Lockbox)** | | | | | | | | | | | | | |
| Stretch Films | 3,755 | 3,811 | 3,926 | 3,127 | 4,333 | 4,652 | 4,685 | 3,474 | 3,947 | 3,882 | 3,953 | 4,010 | 3,667 |
| Custom Films | 2,199 | 2,255 | 2,346 | 2,183 | 2,571 | 2,791 | 2,813 | 2,419 | 2,486 | 2,439 | 2,403 | 2,375 | 2,274 |
| Institutional Products | 282 | 312 | 338 | 118 | 439 | 450 | 458 | 399 | 429 | 429 | 416 | 406 | 338 |
| Injection Molded | 1,855 | 1,860 | 1,863 | 2,207 | 1,799 | 1,827 | 1,852 | 1,854 | 1,519 | 1,543 | 1,564 | 1,582 | 1,470 |
| Injection Molded - Whirlpool Credits (1) | (542) | (542) | (542) | (542) | (542) | (574) | (574) | (574) | (509) | (509) | (509) | (509) | (509) |
| Profile Extrusion | 438 | 458 | 454 | 250 | 555 | 560 | 580 | 432 | 476 | 472 | 468 | 465 | 416 |
| Total Cash Receipts - Customers | 7,986 | 8,155 | 8,385 | 7,343 | 9,123 | 9,707 | 9,814 | 8,003 | 8,362 | 8,255 | 8,295 | 8,330 | 7,657 |
| Other Cash Receipts | | | | | | | | | | | | | |
| Insurance Proceeds - BI | | | | 1,300 | | | | | | | | | |
| Total Receipts | 7,986 | 8,155 | 8,385 | 8,643 | 9,123 | 9,707 | 9,814 | 8,003 | 8,362 | 8,255 | 8,295 | 8,330 | 7,657 |
| **Cash Disbursements** | | | | | | | | | | | | | |
| Vendors | | | | | | | | | | | | | |
| Wire Transfers | (4,501) | (7,603) | (8,571) | (7,416) | (7,134) | (6,248) | (6,285) | (5,335) | (5,108) | (4,346) | (5,108) | (4,838) | (5,121) |
| LC Draw | - | (3,500) | - | - | - | - | - | - | - | - | - | - | - |
| Critical Vendor Payments | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tulsa Fire Vendors | - | - | - | (1,400) | - | - | - | - | - | - | - | - | - |
| Insurance Proceeds - Property | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Funded Checks - AP disbursements | (1,776) | (74) | (571) | (645) | (1,072) | (1,227) | (2,330) | (1,596) | (2,831) | (1,880) | (2,346) | (1,583) | (2,346) |
| | (6,277) | (11,177) | (9,142) | (9,461) | (8,206) | (7,475) | (8,615) | (6,931) | (7,939) | (6,226) | (7,454) | (6,421) | (7,467) |
| Payroll & Benefits | | | | | | | | | | | | | |
| Payroll | - | (2,101) | - | (2,339) | - | (2,360) | - | (2,382) | - | (2,181) | - | (1,980) | - |
| Payroll Benefits | (130) | (130) | (130) | (130) | (132) | (132) | (132) | (132) | (110) | (110) | (110) | (110) | (110) |
| Management Incentive | - | (726) | - | - | - | - | - | - | - | - | - | - | - |
| Sales Commissions & bonus | | | | | | | | | | | | | |
| Total Payroll | (130) | (2,957) | (130) | (2,469) | (132) | (2,493) | (132) | (2,514) | (110) | (2,291) | (110) | (2,090) | (110) |
| Other Payments: | | | | | | | | | | | | | |
| LC & Unused Fees (monthly) | (20) | - | - | - | (20) | - | - | (20) | (20) | - | - | - | - |
| Revolver Interest (monthly) | | | | | | | | | | | | | |
| SAL Interest (weekly) | (19) | (19) | (19) | (19) | (19) | (19) | (19) | (19) | (16) | (16) | (16) | (16) | (16) |
| DIP Loan Interest (weekly) | (8) | (8) | (8) | (8) | (17) | (19) | (17) | (17) | (15) | (15) | (15) | (15) | (15) |
| Term Loan Interest paid (quarterly) | | | | | | | | | | | | | |
| Second Lien Interest paid (blocked) | - | - | - | - | (100) | - | - | - | - | - | - | - | - |
| IDB Interest payments | (99) | - | - | - | - | - | - | - | (101) | - | - | - | - |
| IDB Principal payments | | | | | | | | | | | | | |
| Term Loan principal payment | | | | | | | | | | | | | |
| Utility Deposit | - | (500) | (500) | - | - | - | - | - | - | - | - | - | - |
| Other | - | - | - | (4) | - | - | - | (5) | - | - | - | - | (2) |
| Capital Expenditures | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (16) | (16) | (16) | (16) | (16) |
| | (166) | (547) | (547) | (51) | (176) | (56) | (56) | (61) | (168) | (47) | (47) | (47) | (49) |
| Total Operating Disbursements | (6,572) | (14,681) | (9,819) | (11,981) | (8,514) | (10,023) | (8,803) | (9,506) | (8,217) | (8,564) | (7,611) | (8,558) | (7,626) |
| Restructuring Disbursements | (1,358) | (855) | - | (1,290) | - | (75) | - | (1,325) | - | (1,525) | - | (540) | - |
| Total Disbursements | (7,931) | (15,536) | (9,819) | (13,271) | (8,514) | (10,098) | (8,803) | (10,831) | (8,217) | (10,089) | (7,611) | (9,098) | (7,626) |
| **Surplus(Shortfall) in Operating CF for the Period** | $ 55 | $ (7,381) | $ (1,434) | $ (4,627) | $ 608 | $ (391) | $ 1,012 | $ (2,828) | $ 145 | $ (1,834) | $ 685 | $ (768) | $ 31 |
| **Allocation of Borrowings (Paydowns)** | | | | | | | | | | | | | |
| Revolver Borrowings | - | (3,500) | - | - | - | - | - | - | - | - | - | - | - |
| Special Accommodation Borrowings | (435) | - | - | - | - | - | - | - | - | - | - | - | - |

(1) Under the Whirlpool contract, Whirlpool pays for the majority of resin costs directly and charges Atlantis by applying a receivables offset against trade receivables due Atlantis.
These offsets flow through the Atlantis lock box as debit memos, reducing net cash received.

CONFIDENTIAL

## Atlantis Plastics, Inc.
### Weekly Cash Flow Forecast
### Long-term Debt and Availability Detail

(000's)

| Week ended | 8/8/2008 | 8/15/2008 | 8/22/2008 | 8/29/2008 | 9/5/2008 | 9/12/2008 | 9/19/2008 | 9/26/2008 | 10/3/2008 | 10/10/2008 | 10/17/2008 | 10/24/2008 | 10/31/2008 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP Borrowings | - | (3,390) | (1,434) | (4,627) | 608 | (391) | 1,012 | (2,828) | 145 | (1,834) | 685 | (768) | 31 |
| **Revolver Availability Summary** | | | | | | | | | | | | | |
| Committed Line | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 |
| Less: | | | | | | | | | | | | | |
| Outstanding Letters of Credit | 5,050 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 |
| Revolver Balance Outstanding | 19,950 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 |
| Net Revolver Availability | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Special Accommodation Loan Availability** | | | | | | | | | | | | | |
| Committed Line | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Less: | | | | | | | | | | | | | |
| Minimum Availability | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Special Accommodation Loan Outstanding | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| Net Special Accommodation Loan Availability | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **DIP Loan Availability** | | | | | | | | | | | | | |
| Total CAP | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 |
| Less Pre-Petition SAL Balance | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 | 10,901 |
| Committed Line | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 | 10,099 |
| Less: | | | | | | | | | | | | | |
| Minimum Availability | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| DIP Loan Outstanding | - | 3,390 | 4,824 | 9,452 | 8,843 | 9,235 | 8,223 | 11,051 | 10,906 | 12,740 | 12,055 | 12,823 | 12,792 |
| Net DIP Loan Availability | 9,099 | 5,709 | 4,275 | (353) | 256 | (136) | 876 | (1,952) | (1,807) | (3,641) | (1,956) | (2,724) | (2,693) |
| **Combined DIP/SAL** | | | | | | | | | | | | | |
| SAL Loan Outstanding | | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| DIP Loan Outstanding | | 3,390 | 4,824 | 9,452 | 8,843 | 9,235 | 8,223 | 11,051 | 10,906 | 12,740 | 12,055 | 12,823 | 12,792 |
| Combined | | 15,390 | 16,824 | 21,452 | 20,843 | 21,235 | 20,223 | 23,051 | 22,906 | 24,740 | 24,055 | 24,823 | 24,792 |
| Advance Limit | | 22,000 | 22,000 | 22,000 | 24,500 | 24,500 | 24,500 | 24,500 | 26,500 | 26,500 | 26,500 | 26,500 | 26,500 |
| Net Combined Availability | | 6,610 | 5,176 | 548 | 3,657 | 3,265 | 4,277 | 1,449 | 3,594 | 1,760 | 2,445 | 1,677 | 1,708 |
| **Summary of Outstanding Debt** | | | | | | | | | | | | | |
| Revolver | 19,950 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 | 23,450 |
| Special Accommodation Loan | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 |
| DIP Loan | - | 3,390 | 4,824 | 9,452 | 8,843 | 9,235 | 8,223 | 11,051 | 10,906 | 12,740 | 12,055 | 12,823 | 12,792 |
| Senior Term Loan | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 | 116,100 |
| Second Lien Term Loan | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 |
| IDBs | 5,246 | 5,246 | 5,246 | 5,246 | 5,146 | 5,146 | 5,146 | 5,146 | 5,045 | 5,045 | 5,045 | 5,045 | 5,045 |
| | 228,296 | 235,186 | 236,620 | 241,248 | 240,539 | 240,931 | 239,919 | 242,747 | 242,501 | 244,335 | 243,650 | 244,418 | 244,387 |